NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0746n.06

No. 13-1477

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LINDA D. BERNARD,                                    )
                                                     )
    Plaintiff-Appellant,                            )
                                                     )
        v.                                      )
                                                     )
FEDERAL NATIONAL MORTGAGE                            )
ASSOCIATION and WELLS FARGO BANK, N.A.,              )  ON APPEAL FROM THE
                                                     )  UNITED STATES DISTRICT
    Defendants-Appellees,                           )  COURT FOR THE EASTERN
                                                     )  DISTRICT OF MICHIGAN
and                                                  )
                                                     )
FEDERAL HOUSING FINANCE AUTHORITY,                   )
                                                     )
    Intervenor-Appellee.                            )
                                                     )

FILED
Sep 29, 2014
DEBORAH S. HUNT, Clerk

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and POLSTER, District Judge.[*]

    GRIFFIN, Circuit Judge.

    Defendants Federal National Mortgage Association ("Fannie Mae") and Wells Fargo Bank foreclosed on plaintiff Linda Bernard's property located at 17144 Wildemere Street in Detroit. Plaintiff brought the instant action seeking to set aside the foreclosure. The district court granted defendants' motion to dismiss or for summary judgment. Plaintiffs appealed, and we affirm.

---

[*]The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

The district court cogently summarized the facts of this case as follows:

On April 24, 2006, plaintiff executed a mortgage on the Wildemere Property and a promissory note in the amount of $259,500.00. Plaintiff's 30-year mortgage on the Wildemere Property identifies Mortgageit, Inc. as lender, plaintiff as borrower, and MERS as mortgagee and nominee for the lender. The mortgage was recorded on March 23, 2007.

On April 21, 2011, MERS, as nominee for Mortgageit, Inc., assigned the mortgage to Wells Fargo. This assignment was recorded on April 27, 2011. Plaintiff defaulted on her mortgage loan, and attempted to work out a loan modification after her receipt of a notice letter from Wells Fargo's counsel, Trott & Trott, and after notice was published informing her of the right to request a meeting with the mortgage holder or mortgage servicer. Plaintiff received some assistance in obtaining either a loan modification or a short sale from a Housing Specialist at City Vision Alliance. However, plaintiff did not obtain either a loan modification or a short sale.

Accordingly, Wells Fargo pursued foreclosure by advertisement under [Mich. Comp. Laws] §§ 600.3201, *et seq.* On August 2, August 9, August 16 and August 24, 2011, Wells Fargo's counsel had notice of an August 31, 2011 sheriff's sale of the Wildemere Property published in the Detroit Legal News, and a similar notice was posted on the Wildemere Property on August 5, 2011.

The original Sheriff's sale date of August 31, 2011 was adjourned to November 9, 2011. On November 9, 2011, a Sheriff's sale was held, and Wells Fargo was the purchaser of the Wildemere Property for $265,707.69. The Sheriff's Deed was recorded on November 18, 2011.

On November 11, 2011, Wells Fargo quit claimed the Wildemere Property to Fannie Mae. The Quit Claim Deed was recorded on December 12, 2011.

Under Michigan law, plaintiff had six months to redeem the Wildemere Property. *See* [Mich. Comp. Laws] § 600.3240. The six-month redemption period expired on May 9, 2012.

\* \* \*

Fannie Mae subsequently brought an action in Michigan's 36th District Court in Detroit, Michigan against plaintiff and all other occupants of the Wildemere Property to recover possession of the property. On June 25, 2012, the 36th District Court adjourned the eviction action until September 25, 2012, to allow plaintiff time to file an action in the Wayne County Circuit Court.

On September 17, 2012, plaintiff filed a complaint in Wayne County Circuit Court. In addition to money damages, plaintiff seeks to have the November 9, 2011 Sheriff's Sale set aside, the mortgage foreclosure declared void *ab initio*, and title quieted in her name. On October 23, 2012, defendants removed the case to federal court and later filed the instant motion to dismiss or for summary judgment.

The district court granted defendants' motion to dismiss or for summary judgment, and plaintiff now appeals.

## II.

We review de novo a district court's order dismissing a claim under Rule 12(b)(6). *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 457 (6th Cir. 2013). In doing so, we accept all well-pled factual allegations as true and determine whether they plausibly state a claim for relief. *Roberts v. Hamer,* 655 F.3d 578, 581 (6th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), and we "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference[.]" *Handy–Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 539 (6th Cir. 2012) (quotation marks and citation omitted).

In addition, the district court's grant of summary judgment is reviewed de novo. *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Burley v. Gagacki,* 729 F.3d 610, 618 (6th Cir. 2013).

III.

Plaintiff raises two claims under Michigan law. Specifically, plaintiff argues (1) that Wells Fargo improperly used "robo-signers" when transferring title to the mortgage; and (2) that defendants violated Mich. Comp. Laws §§ 600.3205a-c,[1] which govern circumstances under which a mortgagor may request a meeting with the lender to attempt to resolve the foreclosure through mediation or a loan modification. For these reasons, plaintiff argues that the foreclosure sale should be set aside. We disagree.

Under Michigan law, once the statutory redemption period expires, "all of [a] plaintiff's rights in and title to the property [are] extinguished." *Bryan v. JPMorgan Chase Bank*, 848 N.W.2d 482, 485 (Mich. Ct. App. 2014) (citation omitted). Therefore, once the redemption period lapses, a former property owner may not assert any claims with respect to the property. *See id.* Indeed, "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Schulthies v. Baron*, 167 N.W.2d 784, 785 (Mich. 1969)). Moreover, "not just any type of fraud will suffice." *Id.* at 160. Rather, "the mortgagor's claims of fraud, irregularity, accident, or mistake must relate to the sheriff's sale itself, not to 'underlying equities, if any, bearing on the instrument . . . .'" *Bank of N. Y. Mellon Trust Co. Nat'l Ass'n v. Robinson*, No. 311724, 2013 WL 6690678 at *2 (Mich. Ct. App. Dec. 19, 2013) (quoting *Reid v. Rylander*, 258 N.W. 630, 631 (Mich. 1935)).

---

[1]We note that §§ 600.3205a-c were repealed, effective January 5, 2012. However, we will analyze plaintiff's claims under this statute, as it was in effect at the time of the foreclosure.

A mortgagor's hurdles do not end there. Even if a mortgagor can show fraud or irregularity relating to the sheriff's sale itself, courts may only set aside the foreclosure if the mortgagor shows that he or she was prejudiced by the fraud or irregularity. The Michigan Supreme Court, in *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329 (Mich. 2012), "made clear that failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void *ab initio*) but merely voidable." *Conlin*, 714 F.3d at 361 (citing *Kim*, 825 N.W.2d at 337). Under *Kim*, "to prove foreclosure-defect claims, 'plaintiffs must show that they were prejudiced by defendant's failure to comply with [Michigan statutes]. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute.'" *Id.* (quoting *Kim*, 825 N.W.2d at 337).[2]

Regarding plaintiff's claim that defendants used "robo-signers," the district court properly ruled that "plaintiff neither alleges facts nor submits any proof to support her bald statement that Shelaya Glass and Mark Lee were robo-signers with no personal knowledge of the transaction." Accordingly, plaintiff has failed to demonstrate fraud or irregularity sufficient to set aside the foreclosure sale.

As for plaintiff's claim that Wells Fargo violated Michigan's loan modification statutes, we agree with the district court that this claim is meritless. Even assuming, arguendo, that

---

[2]Plaintiff's reliance on this court's decision in *Mitan v. Federal Home Loan Mortgage Corp.*, 703 F.3d 949 (6th Cir. 2012) is misplaced. *Mitan* relied on *Davenport v. HSBC Bank*, 739 N.W.2d 383 (Mich. Ct. App. 2007). *Davenport* held that the failure of a mortgagee to comply with the requirements of Mich. Comp. Laws § 600.3201, *et seq.* rendered the foreclosure *void ab initio*. *Id.* at 384. *Kim* expressly abrogated *Davenport*'s rule, holding that a mortgagee's failure to comply with the foreclosure statute rendered the foreclosure voidable. *Kim*, 825 N.W.2d at 336. *Mitan*, therefore, was abrogated by *Kim*, a fact which this court has recognized. *See Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 367 (6th Cir. 2013). Contrary to plaintiff's claims, *Mitan* and *Kim* are not reconcilable.

plaintiff could show that defendants failed to comply with § 3205c by failing to meet with plaintiff before beginning the foreclosure, plaintiff cannot show prejudice as a result of that noncompliance. Plaintiff does not identify any authority for the proposition that if a mortgagor qualifies for a loan modification, the lender is required to provide one. One statutory provision, Mich. Comp. Laws § 600.3204(4)(f), prevents the initiation of a foreclosure proceeding where a modification has already been agreed to by the parties, but, perhaps obviously, nothing in the statute compels the parties to reach an agreement. In any case, the Michigan courts have already held that even if a mortgagor meets the eligibility criteria for a modification, the lender is not required to grant the modification. *Brown v. Wachovia Mortg.*, No. 307344, 2013 WL 6083906, at *5 (Mich. Ct. App. Nov. 19, 2013). Moreover, Mich. Comp. Laws § 600.3205c(6) provides that if the modification statutes are complied with, and if the mortgagee is eligible for a modification, the foreclosure proceeding is not stopped, but merely converted from a foreclosure by advertisement into a judicial foreclosure. Accordingly, defendants' compliance with the modification statutes would not have put plaintiff in a "better position to preserve [her] interest in the property absent [defendants'] noncompliance with the statute." *Kim*, 825 N.W.2d at 337.[3]

For these reasons, we affirm the district court's ruling on plaintiff's state law claims.

---

[3]Plaintiff argues that the post-*Kim* case *Sobh v. Bank of America, NA*, No. 308441, 2013 WL 2460022 (Mich. Ct. App. June 6, 2013) controls and requires that we remand here. We disagree. There, the court determined that the lender had breached Mich. Comp. Laws § 600.3204(3), which requires that there be a "record chain of title . . . prior to the date of sale[,]" because interim assignments in the chain of title had never been recorded. *Id*. at *3. The court remanded for a determination whether this defect prejudiced the plaintiff. In other words, the prejudice determination in *Sobh* required further factfinding. By contrast, here, no further factfinding is required. This is because, even assuming that defendants failed to comply with the modification statutes, plaintiff would have at most received a judicial foreclosure, not an order to set aside the foreclosure.

IV.

Plaintiff also argues that the foreclosure violated the Due Process Clause of the Fifth Amendment. Constitutional claims require state action. *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 25 (6th Cir. 1975). The dispositive issue in the present case is whether Fannie Mae is a state actor. If so, then the foreclosure was required to comply with constitutional due process. However, we hold that Fannie Mae is not a state actor. Accordingly, the foreclosure did not violate the Fifth Amendment.

Fannie Mae and its companion, Freddie Mac, are Government-Sponsored Enterprises ("GSEs") that purchase and securitize residential mortgages. In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"). Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511). HERA, among other things, established the FHFA and by statute empowered it to take conservatorship of Fannie Mae and Freddie Mac. Plaintiff does not argue that before FHFA's conservatorship, Fannie Mae was a private actor. Rather, plaintiff argues that FHFA's conservatorship converted Fannie Mae from a private actor to a state actor. We disagree.

Our existing precedent resolves this issue. In *Mik v. Federal Home Loan Mortgage Corporation*, 743 F.3d 149, 168 (6th Cir. 2014) (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)), we held as a matter of law that Freddie Mac is not a state actor. In so doing, we cited with approval and relied upon authority expressly rejecting arguments identical to plaintiff's. *Id.* Plaintiff offers no reason to depart from *Mik*'s holding. Accordingly, we are bound by precedent to hold that Fannie Mae is not a state actor. We also note that every district court that has confronted the question has reached the same conclusion. *See, e.g., Dias v. Fed. Nat'l Mortg. Ass'n*, 990 F. Supp. 2d 1042, 1062 (D. Haw. 2013); *Lopez v. Bank of America*,

*N.A.*, 920 F. Supp. 2d 798, 801 (W.D. Mich. 2013); *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 95 (D.D.C. 2012). Additionally, although we acknowledge that state court decisions regarding federal constitutional issues are not binding on us, *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 528 (6th Cir. 2012), we also note that the highest Michigan state court to consider the issue has also concluded that the GSEs are not state actors. *Fed. Home Loan Mortg. Ass'n v. Kelley*, ___ N.W.2d ___, No. 315082 (Mich. Ct. App. Aug. 26, 2014). For these reasons, plaintiff's claim that she was entitled to constitutional due process during her foreclosure proceeding fails as a matter of law.

Moreover, we would reach this same conclusion even without reliance on *Mik*. Under Supreme Court precedent, a necessary condition precedent for a conclusion that a once-private entity is a state actor is that the government's control over the entity is permanent. *Lebron*, 513 U.S. at 399. Under HERA, Congress, by statute, empowered the FHFA to become conservator for Fannie Mae for the limited purpose of "reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). This is an inherently temporary purpose. Accordingly, even if we had not previously decided *Mik*, we would reach the same conclusion: that following FHFA's conservatorship, Fannie Mae is not a state actor.

V.

Plaintiff also argues that the foreclosure violated the federal Home Affordable Modification Program ("HAMP"), and the Emergency Economic Stabilization Act ("EESA"), 12 U.S.C. § 5201 *et seq*. We disagree.

Defendants urge dismissal of these claims on the basis that neither HAMP nor the EESA provide for a private right of action. They are correct, but this fact is not dispositive in this case. Plaintiff correctly notes that she can still use "violations of [these statutes] to establish [her] state

law claims." *Mik*, 743 F.3d at 167; *see also id* at 165–67 (holding that a plaintiff may use violations of federal law "'offensively' to establish a state law cause of action" even where the statute does not provide for a private right of action under federal law, and expressly rejecting an argument similar to defendants'). In short, plaintiff may raise HAMP and EESA violations as a defense to her foreclosure under state law.

However, under Michigan law, plaintiff still must show prejudice arising from those violations, even assuming that she can show that the foreclosure violated HAMP and EESA. That is, plaintiff must still show that she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with" those statutes. *Kim*, 825 N.W.2d at 337. Plaintiff does not do so. Even assuming that defendants did in fact violate HAMP and EESA, plaintiff does not allege, nor present any evidence, that absent defendants' noncompliance she would have been able to keep the property and avoid the foreclosure. Rather, plaintiff simply argues that there were HAMP and EESA violations and leaves the matter at that. But, as noted, this is insufficient under Michigan law. As this court has recognized, plaintiffs seeking to invalidate a foreclosure after the expiration of the redemption period must show "double liability" (i.e., a violation of the law and prejudice from that violation). *Conlin*, 714 F.3d at 362. Plaintiff has not done so. Therefore, the district court did not err by dismissing plaintiff's claims as to HAMP and EESA violations.

VI.

Finally, plaintiff challenges the district court's dismissal of her claim that her failure to receive a loan modification violated the nondiscrimination requirements of the Fair Housing Act ("FHA"). Again, we agree with the district court's dismissal.

> To state a claim for relief under [the FHA], . . . plaintiff[] must plead that (1) [she was] a member of a protected class; (2) [she] attempted to engage in a "real estate-related transaction" with [defendants] and met all relevant qualifications for doing so; (3) [defendants] refused to transact business with [plaintiff] despite [her] qualifications; and (4) [defendants] continued to engage in that type of transaction with other parties with similar qualifications.

*Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir. 1994).

Here, plaintiff's FHA claims fail because plaintiff failed to allege facts or submit evidence that she was qualified for a loan modification. As the district court recognized, this is an "essential element of her [FHA] claim." Plaintiff's argument on appeal is that she has pleaded facts relating to her race, but this is not the basis on which the district court dismissed her claim. The fact remains that she has not shown she was qualified for a loan modification. Nor has plaintiff alleged that defendants offered modifications to those outside of the protected class while denying them to her, another essential element of her claim.

Plaintiff opines in a general sense that FHA claims are "not subject to a special or heightened pleading standard." However, this court has held that although Rule 12 embodies a "liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005). Accordingly, requiring plaintiff to allege all essential elements of her claim is not akin to subjecting her to a heightened pleading standard. The district court did not err in dismissing plaintiff's FHA claim.

VII.

For these reasons, we affirm the judgment of the district court.