NOT RECOMMENDED FOR PUBLICATION
File Name:  14a0749n.06

No. 13-1249

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 30, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) | |
| Plaintiff/Counter-Defendant/Appellee, | ) ) | |
| and | ) ) | |
| FEDERAL HOUSING FINANCE AGENCY, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| Intervenor-Appellee, | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| ENYKA M. GAINES and RICO R. GAINES, | ) ) | |
| Defendants/Counter-Plaintiffs/Appellants. | ) ) ) | |

BEFORE:  McKEAGUE and GRIFFIN, Circuit Judges; and POLSTER, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiffs Enyka and Rico Gaines,[1] brought this action challenging the foreclosure and sale of their property by defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"). The district court dismissed their complaint.  We affirm.

---

[*]The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]Although the Gaineses were defendants in the original eviction action, they bring this appeal challenging the district court's dismissal of the claims they brought in their counter-

I.

The district court cogently summarized the facts of this case:

[Plaintiffs] obtained a mortgage loan from the First Magnus Financial Corporation . . . . As a security for the loan, they authorized the placement of a mortgage on a parcel of realty, commonly known as 43637 Arborview Lane in Belleville, Michigan. This security was subsequently assigned to the Wells Fargo Bank ("Wells Fargo"). At some point thereafter, [plaintiffs] defaulted on their loan.

On December 22, 2009, [plaintiffs] and Wells Fargo entered into a loan modification trial period plan [("TPP")] under the "Home Affordable Modification Program." This loan modification [TPP] required [plaintiffs] to make three separate payments of $926.32 on or before January 1, 2010, February 1, 2010, and March 1, 2010, respectively. [The TPP also stated:]

> I understand that the [Trial Period Plan] is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this plan.

Thereafter, Wells Fargo commenced a foreclosure action by advertisement against [plaintiffs] whom they claimed had failed to satisfy their requisite financial obligations.

Following the expiration of the six-month statutory redemption period,[2] Freddie Mac filed an eviction action in state court, to which plaintiffs filed a counter-complaint. Freddie Mac removed plaintiffs' counterclaim to the district court, which then granted Freddie Mac's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiffs appealed.

---

complaint to the eviction action. We therefore refer to them as plaintiffs for purposes of this opinion.

[2]Following a foreclosure sale, Michigan law provides a period of time for the foreclosed-upon mortgagor to purchase back, or "redeem" the property. *See* Mich. Comp. Laws §§ 600.3240(7)–(12).

II.

The district court's decision on a motion under Rule 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (citation and quotation marks omitted).

III.

We turn first to plaintiffs' constitutional claim. Plaintiffs argue that their foreclosure violated the Due Process Clause of the Fifth Amendment. Constitutional claims require state action. *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 25 (6th Cir. 1975). The dispositive issue in the present case is whether Freddie Mac is a state actor. If so, then the foreclosure was required to comply with constitutional due process. However, we hold that Freddie Mac is not a state actor. Accordingly, the foreclosure did not violate the Fifth Amendment.

Freddie Mac and its companion, Fannie Mae, are Government-Sponsored Enterprises ("GSEs") that purchase and securitize residential mortgages. In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"). Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511). HERA, among other things, established the Federal Housing Finance Authority ("FHFA") and by statute empowered it to take conservatorship of Fannie Mae and Freddie Mac. Plaintiffs do not argue that before FHFA's conservatorship, Freddie Mac was a private actor. Rather, plaintiffs argue that FHFA's conservatorship converted Freddie Mac from a private actor to a state actor. We disagree.

Our existing precedent resolves this issue. In *Mik v. Federal Home Loan Mortgage Corporation*, 743 F.3d 149, 168 (6th Cir. 2014) (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)), we held as a matter of law that Freddie Mac is not a state actor. In so doing, we cited with approval and relied upon authority expressly rejecting arguments identical to those plaintiffs raise. *Id*. Plaintiffs offer no reason to depart from *Mik*'s holding. Accordingly, we are bound by precedent to hold that Freddie Mac is not a state actor. We also note that every district court that has confronted the question has reached the same conclusion. *See, e.g., Dias v. Fed. Nat'l Mortg. Ass'n*, 990 F. Supp. 2d 1042, 1062 (D. Haw. 2013); *Lopez v. Bank of America*, *N.A.*, 920 F. Supp. 2d 798, 801 (W.D. Mich. 2013); *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 95 (D.D.C. 2012). Additionally, although we acknowledge that state court decisions regarding federal constitutional issues are not binding on us, *Commodities Exp. Co. v. Detroit Int'l Bridge Co*., 695 F.3d 518, 528 (6th Cir. 2012), we also note that the highest Michigan state court to consider the issue has also concluded that the GSEs are not state actors. *Fed. Home Loan Mortg. Ass'n v. Kelley*, ___ N.W.2d ___, No. 315082 (Mich. Ct. App. Aug. 26, 2014). For these reasons, plaintiffs' claims that they were entitled to constitutional due process during their foreclosure proceeding fails as a matter of law.

Moreover, we would reach this same conclusion even without reliance on *Mik*. Under Supreme Court precedent, a necessary condition precedent for a conclusion that a once-private entity is a state actor is that the government's control over the entity is permanent. *Lebron*, 513 U.S. at 399. Under HERA, Congress, by statute, empowered the FHFA to become conservator for Freddie Mac for the limited purpose of "reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). This is an inherently temporary purpose. Accordingly,

even if we had not previously decided *Mik*, we would reach the same conclusion:  that following

FHFA's conservatorship, Freddie Mac is not a state actor.

IV.

To the extent that plaintiffs challenge the foreclosure proceeding itself and seek to have

us set it aside, these claims also fail because plaintiffs lack standing to challenge the foreclosure.

Under Michigan law, once the statutory redemption period expired, "all of [a] plaintiff's

rights in and title to the property were extinguished."  *Bryan v. JPMorgan Chase Bank*,

848 N.W.2d 482, 485 (Mich. Ct. App. 2014) (citation omitted).  Therefore, once the redemption

period lapses, a former property owner may not assert any claims with respect to the property.

*See id*.  The filing of a lawsuit—even one filed prior to the expiration of the redemption period—

will not toll the redemption period.  *Id*.  Indeed, "Michigan courts have held that once the

statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale

where the mortgagor has made 'a clear showing of fraud, or irregularity.'"  *Conlin v. Mortg.*

*Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Schulthies v. Baron*,

167 N.W.2d 784, 785 (Mich. 1969)).

Here, plaintiffs' standing argument turns on their separate breach-of-contract claim.

Specifically, plaintiffs argue that they have standing to challenge the foreclosure agreement

because Freddie Mac, through its servicing agent, Wells Fargo, breached the TPP agreement.

Even if we found plaintiffs' breach of contract claim meritorious,[3] that would still not be a basis

to set aside the foreclosure.  As the Michigan courts have held, "the mortgagor's claims of fraud,

irregularity, accident, or mistake [sufficient to set aside the foreclosure] must relate to the

sheriff's sale itself, not to 'underlying equities, if any, bearing on the instrument . . . .'"  *Bank of*

---

[3]We do not find these claims meritorious, *see infra* Part IV.

*N. Y. Mellon Trust Co. Nat'l Ass'n v. Robinson*, No. 311724, 2013 WL 6690678 at \*2 (Mich. Ct. App. Dec. 19, 2013) (quoting *Reid v. Rylander*, 258 N.W. 630, 631 (Mich. 1935)). Based on this record, plaintiffs have not demonstrated fraud or irregularity related to the sheriff's sale itself—they have therefore failed to overcome the presumption that their title to the property was extinguished upon the expiration of the redemption period. Accordingly, plaintiffs lack standing to challenge the foreclosure, and the district court properly dismissed plaintiffs' state law claims challenging the foreclosure.

V.

Plaintiffs raise two arguments related to the TPP. Neither has merit.

First, plaintiffs argue that they were told by Freddie Mac that, upon completion of the TPP they would receive a permanent loan modification. Plaintiffs argue that these representations were false and constituted fraud. We agree with the district court's dismissal.

Plaintiffs were offered a permanent modification, but there is no evidence they ever accepted this offer. In May 2010, plaintiffs received a letter indicating that they had completed the trial modification and that they would be receiving documentation for a permanent modification. That document stated that plaintiffs were required to "review, sign[,] and return the agreement to us as soon as possible. *We cannot complete your loan modification without your signed agreement.*" (Emphasis added.) (*Id.*). There is no indication in the record that plaintiffs ever returned the signed permanent modification agreement. In other words, there is no evidence that plaintiffs ever accepted Freddie Mac's offer for a permanent modification. Plaintiffs, in their counter-complaint, indeed admit that they never accepted this offer because the "loan modification amount [in the permanent modification offer] was totally different and significantly higher than [plaintiffs'] payments before applying for a modification." But

plaintiffs point to no evidence that Freddie Mac ever committed to specific terms for the permanent modification, nor does there appear to be any such evidence in the record. Indeed, the TPP specifically states that, if the homeowner is eligible for a permanent modification, "the lender will determine the new payment amount" going forward. Contrary to their arguments, plaintiffs received exactly what they were promised—an opportunity for a permanent modification. The fact that they were dissatisfied with the terms of the permanent modification and rejected the offer is not a basis for a finding of fraud.

Second, plaintiffs argue that Freddie Mac breached the TPP agreement by foreclosing, despite the fact that they had made the payments required by the TPP. However, as the district court noted, the TPP specifically stated that the lender's acceptance of payments under the TPP "will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of [the mortgagor's] default . . . ." In other words, the TPP is not an agreement not to foreclose. To the contrary, it specifically reserves the right to foreclose even though payments were made. Accordingly, plaintiffs' argument that the foreclosure constituted a breach of the TPP is meritless.

## VI.

For these reasons, we affirm the judgment of the district court.