RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0064p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

ANGEL GARCIA; ESTELA GARCIA,

        *Plaintiffs-Appellants,*

    *v.*

FEDERAL NATIONAL MORTGAGE ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BAC HOME LOANS SERVICING, LP; BANK OF AMERICA, N.A.,

        *Defendants-Appellees,*

FEDERAL HOUSING FINANCE AGENCY,

        *Intervenor-Appellee.*

No. 14-1687

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
No. 1:13-cv-01259—Robert J. Jonker, District Judge.

Decided and Filed:  April 7, 2015

Before:  MERRITT, STRANCH, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Jason D. Jenkinson, Traverse City, Michigan, for Appellants.  Steven R. Smith, Jena M. Valdetero, BRYAN CAVE, LLP, Chicago, Illinois, for Defendants-Appellees.  Howard N. Cayne, Asim Varma, Michael A. Johnson, ARNOLD & PORTER LLP, Washington, D.C., for Intervenor-Appellee.

    MERRITT, J., delivered the opinion of the court, in which STRANCH, J., joined. DONALD, J. (pp. 11–12), concurred in the judgment only.

---

**OPINION**

---

MERRITT, Circuit Judge.  This case presents another appeal from a home foreclosure in Michigan.  Plaintiffs raise one issue on appeal:  Whether the district court erred in dismissing plaintiffs' due process claim because it found that the Federal National Mortgage Association,[1] commonly referred to as Fannie Mae, was not a state actor for constitutional purposes when it foreclosed upon their home?  We affirm the district court's judgment dismissing the due process claim as without merit, but on the ground that the Michigan foreclosure procedure does not violate due process.

**I.**

Plaintiffs Angel and Estela Garcia obtained a home loan in 2003 from First Guaranty Mortgage Corporation and granted a mortgage to Mortgage Electronic Registration Systems, Inc., sometimes referred to as "MERS,"[2] as mortgagee and nominee for lender First Guaranty and its successors and assigns.  The mortgage was duly recorded with the Leelanau Register of Deeds.  In January 2011, Mortgage Electronic Registration Systems assigned the mortgage to BAC Home Loans Servicing, LP, and the assignment was recorded.  BAC Home Loans merged into Bank of America on July 1, 2011, and Bank of America became the mortgage holder.  As successor by merger, Bank of America was not required to record the assignment.

Plaintiffs do not dispute that in 2007 they fell behind on their mortgage payments and defaulted on the loan.  In January 2011, plaintiffs received a letter regarding the default and containing information explaining their rights, including the right to seek a loan modification.  Plaintiffs sought foreclosure-related assistance from the Northern Michigan Community Action

---

[1]Fannie Mae, and its twin brother Freddie Mac, are government–sponsored private enterprises that purchase and securitize residential mortgages. Specifically, Fannie Mae is a federally chartered corporation that operates in the secondary mortgage market, purchasing and securitizing residential mortgages to provide mortgage lenders with capital to use to fund additional mortgages.

[2]MERS is a system for electronically tracking interests in mortgages that are traded on the secondary market. MERS members (approximately 6,000) agree that MERS serves as mortgagee or beneficiary, and when loan ownership or servicing rights are sold from one MERS member to another, MERS remains the titleholder to the security instrument as nominee on behalf of whoever owns the loan. The language on a standard mortgage or deed of trust reads: "MERS is the mortgagee [or beneficiary] of this security instrument. MERS is a separate corporation that acts solely as nominee on behalf of the lender and its successors and assigns."

Agency, and Mr. Garcia and his son attended a workshop offered by the agency on how to prevent foreclosure. Plaintiffs also attended a meeting with Bank of America's legal counsel in April 2011, providing counsel with financial information and forms prepared with help from the Northern Michigan Community Action Agency.[3]

Plaintiffs were offered a loan modification by Bank of America allowing for reduced payments for a three-month trial period. The letter offering the loan modification directed plaintiffs to make the lowered payments on time for three months and stated that if all the trial period payments were timely made, the loan would be permanently modified. Plaintiffs allege that they made the three payments in accordance with the letter, but that they did not receive any further information regarding a new payment amount after the three modified payments were made. They also allege that Bank of America returned two payments they attempted to make in March 2012. Despite the returned payments, Bank of America offered plaintiffs a permanent loan modification in May 2012 and instructed them to execute and return the loan modification agreement sent to them. Plaintiffs do not allege that they ever executed or returned the loan modification agreement to Bank of America, and Bank of America confirms that it never received any of the required loan modification documents.

In August 2012, Bank of America's legal counsel sent plaintiffs a letter informing them that because they were in default and had not accepted the loan modification agreement, a non-judicial foreclosure would proceed. Notice of the foreclosure was published in accordance with Michigan law and the property was sold at a sheriff's sale on October 12, 2012. Bank of America was the high bidder and purchased the property. It then executed a quitclaim deed to Fannie Mae that was recorded on November 29, 2012. The six-month statutory redemption period under Michigan law expired on April 12, 2013. In June 2013, Fannie Mae filed a possession action in the local court. On October 15, 2013, more than six months after the statutory redemption period had expired, plaintiffs filed this action in Michigan state court against defendants Fannie Mae, Mortgage Electronic Registration Systems, BAC Home Loans Servicing, LP, and Bank of America, N.A. Defendants removed the case to federal court

---

[3]Plaintiffs claim that they are not proficient in the English language, but they do not claim that this prohibited them from receiving adequate notice of the default or understanding their rights in the foreclosure process with help from the Northern Michigan Community Action Agency and their son.

pursuant to both diversity and federal-question jurisdiction. The Federal Housing Finance Agency, the federal "conservator" for winding up the affairs of Fannie Mae, was permitted to intervene.[4]

Plaintiffs brought four claims in their complaint: (1) Quiet Title pursuant to Mich. Comp. Laws § 600.2932; (2) violations of Fifth and Fourteenth Amendment Due Process Rights; (3) illegal/improper foreclosure and sheriff's sale pursuant to Mich. Comp. Laws § 600.3204; and (4) violation of Mich. Comp. Laws § 3205 *et seq*. Defendants Fannie Mae, Mortgage Electronic Registration Systems, BAC Home Loans Servicing and Bank of America filed a motion to dismiss, as did the intervenor, Federal Housing Finance Agency. The district court granted the motions to dismiss on all claims. Plaintiffs appeal only the dismissal of Count II, which claims violation of their Fifth and Fourteenth Amendment Due Process Rights.

## II.

We review a ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss *de novo*. *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). A complaint must contain sufficient factual matter, accepted as true, to "state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4]Congress enacted the Housing and Economic Recovery Act, Pub. L. 110–289, 122 Stat. 2654, on July 30, 2008. The Act created the Federal Housing Finance Agency as the successor agency to the Office of Federal Housing Enterprise Oversight, which had been established in 1992 to regulate Fannie Mae and Freddie Mac, and the Federal Housing Finance Board. Congress designated the Federal Housing Finance Agency "an independent agency of the Federal Government" and authorized the Director to issue regulations, using notice and opportunity for public comment pursuant to the Administrative Procedure Act, 5 U.S.C. § 553. The Federal Housing Finance Agency regulates and supervises Fannie Mae, Freddie Mac, and the twelve Federal Home Loan Banks. 12 U.S.C. § 4511 (2008). Additionally, the Federal Housing Finance Agency serves as conservator or receiver of Fannie Mae and Freddie Mac for purposes of "reorganizing, rehabilitating, or winding up [their] affairs." *Id.* § 4617(a)(2). The Director of the Federal Housing Finance Agency was given "general regulatory authority over" Fannie Mae and Freddie Mac (as well as the Federal Home Loan Banks and the Office of Finance), *id.* § 4511(b)(2), and was directed to ensure, among other things, that Fannie Mae and Freddie Mac operate "in a safe and sound manner" and "foster liquid, efficient, competitive, and resilient national housing finance markets . . . ." 12 C.F.R. § 1200.2.

**III.**

The Fifth and Fourteenth Amendments prohibit the deprivation of property by a state actor without due process of law. Our previous decisions concerning the Due Process Clause as it relates to foreclosures by Freddie Mac and Fannie Mae have focused on whether Freddie Mac and Fannie Mae have been transformed into state actors in light of the conservatorship of the Federal Housing Finance Agency.[5] We have not addressed the questions of whether the Federal Housing Finance Agency is a state actor and what restrictions the Due Process Clause may impose on the Agency in its direction of Fannie Mae. We find it unnecessary to wade into that discussion in this case. Even if the Due Process Clause constrains the Federal Housing Finance Agency in its direction of Fannie Mae, its compliance with Michigan's foreclosure-by-advertisement procedures satisfied the requirements of the Due Process Clause.

We begin with a brief look at the historical development of foreclosure and redemption at common law. At early common law, the mortgagee had the right to confiscate the mortgaged property at the time of the first missed payment. If the mortgagor had made a number of payments, the mortgagee received a windfall because it kept all payments made up to the time of default and then also received full title to the property as well. Accordingly, the Court of Chancery in the sixteenth century sought to mitigate this harsh result by granting the mortgagor an equitable period of time to redeem the property by coming current with the payments. The mortgagor's equity of redemption demonstrates the equity courts' reluctance to permit unfair or inequitable loss of a person's property. However, the ambiguity surrounding the equitable redemption process, particularly the uncertainty of the amount of time to redeem the property, prompted states to regularize the process with statutory redemption periods starting in the early 1800s. *See* Theodore F. T. Plucknett, *A Concise History of the Common Law* 603-08 (1956); Thomas W. Bigley, Comment, *Property Law–The Equity of Redemption: Who Decides When It Ends?*, 21 Wm. Mitchell L. Rev. 315, 319-22 (1995); Grant Nelson & Dale Whitman, *Real Estate Finance Law* §§ 7:1-7:5 (3d ed. 1994).

---

[5]*See Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 168 (6th Cir. 2014); *Rubin v. Fannie Mae*, 587 F. App'x 273 (6th Cir. 2014); *Bernard v. Fed. Nat'l Mortg. Ass'n*, 587 F. App'x 266 (6th Cir. 2014), *petition for cert. filed*, 83 U.S.L.W. 3636 (U.S. Dec. 29, 2014) (No. 14-804); *Fed. Home Loan Mortg. Corp. v. Gaines*, 589 F. App'x 314 (6th Cir. 2014), *petition for cert. filed*, 83 U.S.L.W. 3636 (U.S. Dec. 29, 2014) (No. 14-804); *Heibel v. Fed. Nat'l Mortg. Ass'n*, 581 F. App'x 543 (6th Cir. 2014).

As a result, two types, or phases, of the right to redemption now generally exist in the United States.  The first is an "equitable" redemption period that occurs before the foreclosure and sale of the property. It allows the mortgagor to pay the outstanding debt and have his rights to the property restored.  This opportunity may not be waived by contract and is a creation of the Court of Chancery four centuries ago. The right to redeem *after* the foreclosure and sale is a "statutory right of redemption."  Statutory redemption provides that even after the equitable right of redemption has been foreclosed, the borrower has one more opportunity to regain the property by paying the purchaser at the foreclosure sale the price paid at the sale.  The statutory redemption period is in fact an *additional* period granted to the property owner after the equitable redemption period ends at the time of sale.

The requirement for "due process of law" functions somewhat like equity to require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings. "Procedural due process" at its core requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Accordingly, the Due Process Clause is flexible and calls for such procedural protections as the particular situation demands.  Due process is required to prevent, to the extent possible, an *erroneous* deprivation of property.  *See Gilbert v. Homar*, 520 U.S. 924, 930-32 (1997) (due process calls for such procedural protections as the situation demands).  The extent to which procedural due process must be afforded the plaintiff is influenced by the extent to which he may suffer loss and depends upon whether his interest in avoiding that loss outweighs the governmental interest in summary adjudication.  *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886 (1961), tells us that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* at 895.

Although we find no Supreme Court opinion ruling on what procedures satisfy due process in this foreclosure context, lower courts, scholars, Congress, and agencies have taken varied approaches to the question of whether, and how, federally related entities, including the Department of Veterans Affairs, and its predecessor the Veterans Administration, the Farmers

Home Administration, and the Department of Housing and Urban Development are subject to due process constraints when they foreclose mortgages. These agencies, which sometimes are direct lenders and other times only insure loans to borrowers, may utilize nonjudicial foreclosures that provide specified notice requirements but no hearing before the property is sold. *See* Florence Wagman Roisman, *Protecting Homeowners from Non-Judicial Foreclosure of Mortgages Held by Fannie Mae and Freddie Mac*, 43 Real Estate L. J. 125 (2014).

## A. *Notice*

The traditional assumption in the United States has been that the required notice for a foreclosure is a contractual or statutory matter and not a constitutional problem. *See Scott v. Paisley*, 271 U.S. 632, 635 (1926) (notice to a mortgagor is sufficient if a sale of mortgaged property is conducted in accordance with the terms of a contract). More recent Supreme Court decisions have required that to satisfy the Due Process Clause, the notice must be "reasonably calculated . . . to apprise interested parties . . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) ("When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.").

The Michigan foreclosure-by-advertisement statute's notice requirements are not at odds with notions of due process under both common law and Supreme Court precedent. The statute requires notice and opportunities to cure the default or redeem the property at several points before the borrower's rights are fully extinguished. The process begins with written notice to the borrower by the foreclosing party, by first-class mail and certified mail, return receipt requested, both sent to the borrower's last-known address. The notice must set forth the reasons that the mortgage is in default and state the amount that is due and owing, and inform the borrower that he has 30 days to request a meeting to attempt to work out a loan modification. If the borrower requests such a meeting within 30 days of receiving notice of the default, foreclosure proceedings will not commence until at least 90 days after the notice is mailed to the borrower. The default notice must also inform the borrower of the number of days in the redemption period

that will be available to the borrower if the property is eventually sold at a foreclosure sale. Mich. Comp. Laws §§ 600.3205a-.3205e, 600.3212 (2012).[6]

The foreclosing party must then give notice to the borrower of the date of foreclosure and sheriff's sale by publishing a notice for four successive weeks, at least once in each week, in a newspaper published in the county where the premises are located. A copy of the notice must also be posted in a conspicuous place upon the premises described in the notice. *Id.* § 600.3208. The notice must also include a statement that if the property is sold at a foreclosure sale, the borrower may bid on the property at the sheriff's sale. *Id.* § 600.3228.

Following the date of the sheriff's sale, the borrower has a six-month, post-foreclosure statutory redemption period in which he may redeem the property pursuant to the procedures set forth in the Michigan law. Mich. Comp. Laws § 600.3240. As noted above, the borrower must be given notice of this six-month statutory period for residential properties in the notice of default. Mich. Comp. Laws § 600.3205a(j).

During the six-month post-foreclosure redemption period, if the borrower believes there has been "fraud or irregularity" in the foreclosure process that has prejudiced his right to retain or redeem his property, he may bring an action in a court of law requesting that the foreclosure be stayed and that the sale be set aside. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). The borrower also has the full complement of Michigan common law remedies regarding fraud, misrepresentation or other unfair practices or dealings, within their applicable statutes of limitation, under which to bring legal action against appropriate parties if the facts so warrant.

Plaintiffs do not dispute that they received the required statutory notice of the foreclosure and subsequent sheriff's sale by both notice posted on the property and notice in the local newspaper. Thus, the Michigan statute provides notice to the homeowner of the default, foreclosure, and sale, as well as notice regarding how to cure the default, notice of an opportunity to seek a loan modification, and notice of how to redeem the property. The plaintiffs

---

[6]Portions of the Michigan foreclosure-by-advertisement statute have been repealed and replaced with new language. However, we rely on the language in effect at the time of the proceedings at issue in this case.

do not plead any erroneous deprivation of property through lack of notice that the Due Process Clause seeks to avoid.

## B. *Right to a Hearing*

Plaintiffs' main argument is that—despite actual notice of default and a six-month redemption period before foreclosure—due process entitles them to a judicial hearing before foreclosure. Where only property rights are involved, however, the postponement of a structured judicial hearing is not a denial of due process if there is adequate opportunity after the foreclosure for such a hearing. *Phillips v. Comm'r,* 283 U.S. 589, 596–97 (1931) ("Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate."); *see also Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611 (1974) (upholding Louisiana statute for seizure of personal property as satisfying due process because the state has a legitimate interest in enabling the creditor to enforce his security interest in the debtor's property); *see also Parratt v. Taylor*, 451 U.S. 527, 539 (1981) (state prison inmate unsuccessfully sued prison officials alleging that the officials' negligent loss of his mail deprived him of his property without due process of law). Although no Supreme Court case we have found addresses the right to a hearing in the foreclosure context, at least two circuit courts have held that where a borrower defaults on a mortgage where the security interest is held by the government, a hearing is not required. *Vail v. Brown*, 39 F.3d 208, 209 (8th Cir. 1994) (Department of Veterans Affairs was not obligated, as matter of due process, to hold a pre-deprivation hearing if it provides notice that is "sufficient to permit the [borrower] to participate in the foreclosure sale and to exercise his or her preforeclosure options."); *McCachren v. U.S. Dep't of Agric., Farmers Home Admin.*, 599 F.2d 655, 657 (5th Cir. 1979) (landowners entitled to a hearing only if the matter of default is in question).

In the foreclosure context, these principles do not require a preforeclosure judicial hearing because the mortgagor is given timely and adequate notice of the reasons for the default in advance of the foreclosure and an opportunity to cure any default, followed by a six-month period to redeem the property, as well as an opportunity to stop the foreclosure and set aside any resulting sale for "fraud or irregularity" in the process. The Michigan statute provides adequate

process in both the period following notice of the default but prior to any sale of the property, and then further opportunity by giving the homeowner another six months to set aside the sale if there has been "fraud or irregularity" in the process. *Kim*, 825 N.W.2d at 337; Mich. Comp. Laws § 600.3240 (2012). This ability to bring an action before expiration of the statutory redemption period satisfies the requirement that there be a hearing "at a meaningful time and in a meaningful manner" before permanent deprivation of property that the homeowner does not yet own free and clear of debt due to the existence of a mortgage on the property.

Plaintiffs here simply have not alleged facts that would demonstrate that they were erroneously deprived of their property years after they first defaulted on the mortgage. Plaintiffs signed a mortgage and a note that allowed for the use of summary foreclosure proceedings in the event of default. Plaintiffs do not contest that they had actual notice of the default and subsequent foreclosure. They contacted the lender several times about loan modification after the foreclosure process was initiated. They met with Bank of America's counsel and were offered a permanent loan modification, which they did not accept. What plaintiffs here would be able to demonstrate if given a pre-foreclosure hearing is left unstated. They acknowledge defaulting on the loan. They do not dispute that they did not accept the offered loan modification. They did not redeem the property during the six-month statutory redemption period. Nor have they alleged any facts demonstrating fraud or irregularity in the process they received that prevented them from taking any of these many opportunities to keep their home. Thus, on the merits of the case, plaintiffs have not stated a Fifth or Fourteenth Amendment due process claim.

For the foregoing reasons, we affirm the judgment of the district court.

---

**CONCURRENCE**

---

BERNICE BOUIE DONALD, Circuit Judge, concurring in the judgment. I agree with the majority's decision to affirm the judgment of the district court. I write separately to express my view that the majority's discussion of whether Fannie Mae's compliance with Michigan's foreclosure-by-advertisement procedures satisfied the Due Process Clause is unnecessary to the disposition of this case.

The majority opinion declines to "wade into" a discussion of whether Fannie Mae is a state actor for purposes of the Fifth and Fourteenth Amendments. (Maj. Op. at 5.) But because state action is a prerequisite to due process claims, this is a threshold—and dispositive—issue in this case. *See Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001) (noting that, in the context of due process claims, the state-action issue is "a threshold matter"); *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 25 (6th Cir. 1975) ("[A] predicate to finding a due process violation is a finding of state action."). I posit that no wading is required: our recent published decisions foreclose Plaintiffs' argument that Fannie Mae is a state actor by virtue of its conservatorship under the supervision of the Federal Housing Finance Agency ("FHFA").

In *Mik v. Federal Home Loan Mortgage Corp.*, we held as a matter of law that Freddie Mac was not a state actor "even though the [FHFA] became Freddie Mac's conservator in 2008." 743 F.3d 149, 168 (6th Cir. 2014). The reasoning in *Mik* is clear: a necessary condition precedent to consider a once-private entity a state actor is that the government has "permanent" control over the entity. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995). FHFA's conservatorship of Freddie Mac "for the purpose of reorganizing, rehabilitating, or winding up [its] affairs" is, by definition, temporary. 12 U.S.C. § 4617(a)(2). Later panels of this Court have extended *Mik*'s holding to Fannie Mae. *See, e.g., Rubin v. Fannie Mae*, 587 F. App'x 273, 274-75 (6th Cir. 2014); *Bernard v. Fed. Nat'l Mortg. Ass'n*, 587 F. App'x 266, 271 (6th Cir. 2014); *Heibel v. Fed. Nat'l Mortg. Ass'n*, 581 F. App'x 543, 544 (6th Cir. 2014) (per curiam). Thus, on the threshold issue of state action, Plaintiffs' constitutional claims

fail. In my view, this renders any discussion of Michigan foreclosure-by-advertisement law unnecessary.

Because I agree with the district court's Rule 12(b)(6) dismissal of Plaintiffs' due process claims, albeit on the separate grounds discussed above, I concur in the judgment.